IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| TONY TERRELL ROBINSON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 18−cv−0164−JPG |
| R. MORRIS, T.G. WERLICH, SMITH, VAN GRUNDY, UNITED STATES OF AMERICA, and VARNEY | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**GILBERT, District Judge:**

Plaintiff Tony Terrell Robinson, an inmate in Federal Correctional Institution Greenville, brings this action for deprivations of his constitutional rights pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971) and the Federal Torts Claims Act, 28 U.S.C. § 1346. Plaintiff seeks declarative relief, damages, and equitable relief. This case is now before the Court for a preliminary review of the Complaint pursuant to 28 U.S.C. § 1915A, which provides:

> (a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or

(2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Upon careful review of the Complaint and any supporting exhibits, the Court finds it appropriate to exercise its authority under § 1915A; portions of this action are subject to summary dismissal.

## The Complaint

Plaintiff originally brought suit in case No. 17-cv-1381-JPG, but certain claims were deemed misjoined and severed into the present action on February 2, 2018. (Doc. 1). As relevant to the claims present in this suit, Plaintiff has alleged that he had a job in the prison law library starting on or around March 1, 2017. (Doc. 2, p. 7). Plaintiff worked without incident during the month of March 2017, and received positive work performance ratings for that month. (Doc. 2, p. 9).

On April 14, 2017, Defendant Morris posted a notice of a change of policy. *Id*. The new policy allowed inmates to use the law library after 4 pm, with the understanding that choosing to do so would require them to remain in the library during the evening meal. *Id*. Plaintiff

2

complained to non-defendant Patterson that the new policy was unfair because it forced inmates to choose between law library access and eating. Plaintiff put his concerns in writing on April 25, 2017, and requested that inmates who went to the library at 4 pm be allowed to leave to go to chow. *Id*.

On May 4, 2017, having not received a response to his concerns, Plaintiff wrote an e-mail to Warden Werlich, which re-iterated Plaintiff's argument that inmates should not have to choose between library access and food. (Doc. 2, p. 10). As a result of his email, Plaintiff was called to the Lieutenant and/or Captain's office to discuss his concerns. *Id*. When Plaintiff returned to the library, his supervisor asked him why he was called away, and Plaintiff explained his position on the new policy. (Doc. 2, p. 11). Plaintiff was later called to Morris' office in response to his email to the Warden. *Id*. They discussed the law library schedule, and then Morris asked Plaintiff if he knew why the library was closed Tuesday. (Doc. 2, p. 12). Plaintiff replied that it was closed for storylink, annual training, and security. *Id*. Morris said he would have to let Plaintiff go because he was paying too much attention to staff comings and goings, which was a security issue. *Id*. Morris told Plaintiff he would be reassigned. *Id*.

Plaintiff started the administrative remedies process about his termination. (Doc. 2, pp. 13-16). During this process, he repeatedly sent requests to Morris asking questions regarding his termination. (Doc. 2, pp. 13-17). On July 27, 2017, Plaintiff sent an email to Morris referring to his previous inquiries, and asking Morris 1) whether he would still have a job if he hadn't emailed the warden; 2) whether there would have been a security issue if he hadn't written the email; 3) what security concern the email specifically raised; 4) why, if there was a security concern, Morris did not discipline Plaintiff. (Doc. 2, pp. 17-18). Plaintiff demanded a detailed

3

response, and when he heard nothing for a week, sent a follow-up email asking why there was a delay. (Doc. 2, p. 18).

On August 4, 2017, the same day Plaintiff sent his follow-up email, Plaintiff was called into the lieutenant's office, where Morris, Varney, Smith, and Van Grundy were present. (Doc. 2, p. 18). Smith asked Plaintiff why he was questioning staff schedules. *Id.* Plaintiff stated he was not questioning staff schedules, he just thought that staff could do more to have the library open. *Id.* Plaintiff stated that he had never inquired into staff schedules. *Id.* Smith dismissed Plaintiff. *Id.* Immediately after the meeting, Plaintiff received a response from Morris indicating that he would not be responding to Plaintiff's questions for the safety and security of the institution. *Id.*

## **Discussion**

The severance order designated 4 claims for this action. The following claim survives threshold review:

> **Count 5** – First Amendment retaliation claim against Morris for terminating Plaintiff from his job as an orderly in the law library.

Plaintiff has attempted to state other claims, but for the reasons explained below, these claims must be dismissed at this time:

> **Count 6** – First Amendment claim against Morris, Varney, Smith and Van Grundy for conspiring to retaliate against Plaintiff on August 4, 2017;
>
> **Count 7** – First Amendment access to the courts claim against Morris for implementing the disputed law library policy; and
>
> **Count 8** – Tort claim against the United States for retaliatory discharge for terminating Plaintiff from his position as an orderly in the prison law library as retaliation for Plaintiff's complaints about the law library.

The Court is aware of the Supreme Court's recent decision in *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1854 (7th Cir. 2017) suggesting that the only valid contexts for constitutional claims

against federal officers are those previously recognized by that Court under the Fourth, Fifth, and Eighth Amendments. However, the Seventh Circuit has long recognized the viability of a claim by a federal prisoner for retaliation in violation of the First Amendment. *See, e.g.*, *Babcock v. White*, 102 F.3d 267, 275 (7th Cir. 1996). The Court does not believe that § 1915A is an appropriate vehicle to resolve the tension between these cases, particularly where, as here, the plaintiff proceeds pro-se. This is a complex legal issue that would benefit from briefing by attorneys. The Court declines to address the proper application of *Ziglar* in this Order, but Defendant may raise the issue again at a later time.

Plaintiff raises retaliation claims in **Counts 5 and 6**. To succeed on a First Amendment retaliation claim, a plaintiff must prove 1) that he engaged in conduct protected by the First Amendment; 2) that he suffered a deprivation that would likely deter First Amendment activity in the future; and 3) that the protected conduct was a "motivating factor" for taking the retaliatory action. *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009).

In order to determine whether speech constitutes protected First Amendment activity, the Court employs the *Turner* test. In *Turner v. Safley*, the Supreme Court articulated the penological interest test: "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." 482 U.S. 78, 89 (1987). The question is whether the speech at issue is consistent with legitimate penological objectives. *Bridges v. Gilbert*, 557 F.3d 541 (7th Cir. 2009). Inmates may complain to staff, but only if the complaints are consistent with their status as prisoners. *Caffey v. Maue*, 679 F. App'x 487, 490 (7th Cir. 2017); *Watkins v. Kasper*, 599 F.3d 791, 797 (7th Cir. 2010).

It is a close call whether Plaintiff's First Amendment retaliation claims survive threshold review. This case is very similar to *Watkins*, where the Seventh Circuit found that the plaintiff

5

did not have a protected interest in his speech criticizing law library policies. 599 F.3d at 797. However, a key piece of reasoning in that case suggested that the plaintiff's speech was not protected at least in part because the plaintiff chose to air his grievances in a public meeting, in front of other prisoner-employees, thus undermining his supervisor's authority and discipline. *Id*. At 797-98 ("Although Watkins has a general First Amendment right to criticize Kasper's library policies, he must do so 'in a *manner* consistent with his status as a prisoner.'") (emphasis in original). Because the Complaint suggests that Plaintiff pursued an informal, written method of raising his complaints in private, it is possible that his speech is protected. Therefore, Plaintiff's claim that Morris retaliated against him for complaining about law library policies by terminating his employment in **Count 5** will proceed.

But **Count 6** fails and must be dismissed at this time, because even assuming that Plaintiff has adequately alleged that he engaged in protected speech as to this claim, Plaintiff has not alleged that Morris, Varney, Smith, and Van Grundy took action adverse to him. That is, he has not alleged that he suffered a deprivation that would deter First Amendment activity in the future. In fact, he has not alleged that he suffered any harm at all arising out of the August 4, 2017 meeting. Harm is a required element to bring a tort claim. *See Bridges*, 557 F.3d at 555; *Doe v. Welborn,* 110 F.3d 520, 523 (7th Cir. 1997). Plaintiff has not alleged that he was disciplined as a result of the meeting, or that he lost privileges around the prison. **Count 6** fails because Plaintiff has not alleged that the defendants harmed him as a result of their conduct. It will be dismissed without prejudice.

**Count 7** fails for a similar reason. The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials interfered with his

6

legal materials. *Devbrow v. Gallegos*, 735 F.3d 584, 587 (7th Cir. 2013) (citing *Lewis v. Casey*, 518 U.S. 343, 348 (1996)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn*, 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868.

Plaintiff has alleged that he believed that Morris' policy caused prisoners to have to choose between exercising their right of access to the courts and eating. The record offers some reasons to question Plaintiff's assumption; Morris apparently told him that the new policy gives inmates the choice of using the law library more, not less. But even if Morris' policies did require inmates to choose between their First Amendment rights and food, Plaintiff lacks standing to bring those claims on behalf of others. *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996). Plaintiff has not alleged that he personally suffered a legal detriment because of Morris' policy. In the absence of some detriment, Plaintiff's claim for law library access fails. **Count 7** will therefore be dismissed without prejudice.

**Count 8** arises pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b) ("FTCA"), which waives sovereign immunity for tort claims arising under state law. Illinois law recognizes the tort of retaliatory discharge. To state a claim for retaliatory discharge under Illinois law, a plaintiff must show: 1) he has been discharged; 2) in retaliation for his activities; 3) the discharge violates a clear mandate of public policy. *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 535 (7th Cir. 2007) (citing *Zimmerman v. Buchheit of Sparta, Inc.*, 645 N.E. 2d 877, 881 (Ill. 1994).

However, regardless of whether Plaintiff has stated an adequate retaliatory discharge claim based on the loss of his law library job, this claim must be dismissed at this time because there is no indication that Plaintiff exhausted his administrative remedies pursuant to the FTCA.

Although typically, affirmative defenses such filing after the statute of limitations and failure to exhaust administrative remedies are litigated by the parties after service, *see Jones v. Bock*, 549 U.S. 199, 212 (2007), a Court may invoke these defenses on § 1915A review when the availability of the defense is apparent on the face of the Complaint. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002); *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992).

A plaintiff may not bring an FTCA suit unless he has first presented his claim for relief to the appropriate federal agency and the agency has denied the claim. 28 U.S.C. § 2675(a). Failure to exhaust remedies before bringing suit dooms the claim. *McNeil v. United States*, 508 U.S. 106, 113 (1993); *Palay v. United States*, 349 F.3d 418, 425 (7th Cir. 2003). Plaintiff included multiple exhibits with his Complaint, as well as a narrative of his attempts to exhaust. Notably, the narrative does not state that Plaintiff attempted to exhaust his FTCA remedies or describe any tort claim submitted to the Bureau of Prisons regarding the loss of the law library job. (Doc. 2, pp. 13-16). Additionally, it is clear that Plaintiff is familiar with this requirement; because exhibits attached to the Complaint show he submitted his tort claim regarding his sewing job and completed the administrative remedies process as to that claim. (Doc. 2, p. 8) (Doc. 2-1, pp. 1, 13, 16-17). There are no comparable documents submitted in connection with the law library claim, and Plaintiff only states that he exhausted via the institution's grievance process, which is sufficient as to Plaintiff's *Bivens* claims, but not as to his FTCA claim. (Doc. 2, p. 21). As it appears that Plaintiff has not adequately exhausted his FTCA claim regarding his law library job, that claim will be dismissed without prejudice.

## Disposition

**IT IS HEREBY ORDERED** that **Count 5** survives against Morris. **Counts 6-7** are **DISMISSED without prejudice** for failure to state a claim. **Count 8** is **DISMISSED without**

**prejudice** for failure to exhaust. Defendants Smith, Van Grundy, United States of America, and Varney are **DISMISSED without prejudice**. Werlich remains a defendant in his official capacity for purposes of equitable relief.

The Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants Morris and Werlich; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve Defendants Morris and Werlich pursuant to Rule 4(e) of the Federal Rules of Civil Procedure.[1] All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

---

[1] Rule 4(e) provides, "an individual – other than a minor, an incompetent person, or a person whose waiver has been filed – may be served in a judicial district of the United States by: (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or (2) doing any of the following: (A) delivering a copy of the summons and of the complaint to the individual personally; (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (C) delivering a copy of each to an agent authorized by appointment or law to receive service of process."

Further, this entire matter is **REFERRED** to a United States Magistrate Judge for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under an obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: May 10, 2018**

s/J. Phil Gilbert
**U.S. District Judge**