UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TONY TERRELL ROBINSON,

    Plaintiff,

v.

R. MORRIS, T.G. WERLICH, LT. SMITH,
and UNITED STATES OF AMERICA,

    Defendants.

Case No. 18-cv-164-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on the Report and Recommendation ("Report") (Doc. 66) of Magistrate Judge Reona J. Daly recommending that the Court grant the motion to dismiss or, in the alternative, for summary judgment filed by the defendant United States of America (Doc. 47); grant the motion to dismiss filed by defendants R. Morris, Lt. Smith, and T.G. Werlich (Doc. 50); and, alternatively, grant the motion for summary judgment filed by defendant Lt. Smith (Doc. 49). Plaintiff Tony Terrell Robinson has objected to the Report (Doc. 67), and the defendants have responded to that objection (Doc. 68). The Court also considers Robinson's motion for leave to file an amended pleading (Doc. 69).

## I.     Report Review Standard

The Court may accept, reject or modify, in whole or in part, the findings or recommendations of the magistrate judge in a report and recommendation. Fed. R. Civ. P. 72(b)(3). The Court must review *de novo* the portions of the report to which objections are made. *Id.* "If no objection or only partial objection is made, the district court judge reviews those unobjected portions for clear error." *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir. 1999).

## II. Background

This matter arose after Robinson, at all relevant times an inmate at the Federal Correctional Institute at Greenville, Illinois ("FCI-Greenville"), complained to Warden Werlich, and other prison staff about a new library policy and was then terminated from his prison job as an orderly in the law library. The new policy provided that inmates who wished to visit the law library after 4:00 p.m. would be required to stay there during the evening meal so they would miss the meal.[1] In his discussions with prison staff about the new policy, Robinson speculated that there was enough prison staff to allow inmates to visit the library *and* eat their evening meal. Shortly thereafter, Morris terminated Robinson from his orderly position, telling him it was because he posed a security threat by paying too much attention to the comings and goings of staff. Later, after Robinson inquired further about his termination, Lt. Smith threatened to ship him to a place he would not like if he continued to ask about the safety and security of FCI-Greenville and to file so many grievances.

In his First Amended Complaint, Robinson brings a claim under *Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971), against Morris for terminating him in retaliation for his complaints in violation of the First Amendment (Count 1); a claim against the United States for retaliatory discharge under the Federal Tort Claims Act ("FTCA") (Count 2); a *Bivens* claim against Smith for threatening to transfer him in retaliation for his complaints in violation of the First Amendment (Count 3); and a *Bivens* claim against Morris and Werlich for the new library

---

[1] There is no evidence that this is the *only* time inmates could visit the law library, just that if they chose to go at this time, they would have to stay there through the evening meal period. In fact, the evidence suggests the library is open at least three hours every day and eight hours on the weekend as required by Policy Statement 1542.06, and that inmates have other opportunities besides the evening meal time to visit it. *See* Werlich's Response to Request for Administrative Remedy # 902120-F1(Doc. 49-5 at 5).

policy in violation of the Eighth Amendment (Count 4).

In the Report, Magistrate Judge Daly recommends that the Court not recognize the *Bivens* actions in Counts 1, 3 and 4 and that the Court find Robinson failed to exhaust his administrative remedies as to Counts 2 and 3.   Robinson objects to the entirety of the Report.

**III.    Analysis**

In its *de novo* review of the matter, the Court addresses Robinson's objections along with the portion of the Report to which each objection pertains.

    A.    <u>Incomplete Findings of Fact</u>

Robinson faults Magistrate Judge Daly for not fully describing the facts, the bases for Robinson's claims, the adverse actions taken against him, and his efforts to exhaust his administrative remedies.   The only specific example to which he points is her failure to mention that Robinson's original complaint did not plead an FTCA cause of action.

The Court has reviewed the evidence in the file and the facts set forth in the Report and finds that the Report recounts accurately all the facts necessary and relevant to the questions before the Court at the moment.   As for Magistrate Judge Daly's omission of the "fact" that there was no FTCA claim pled in Robinson's original complaint, she was right to do so because this Court has already found—twice—that it contained such a claim, and has already dismissed the claim as stated in Robinson's original complaint for failure to exhaust administrative remedies (Doc. 1 at 11; Doc. 8 at 7-9).   The Report accurately states the procedural history of this case.

    B.    <u>Recognition of *Bivens* Action</u>

Magistrate Judge Daly found that Robinson's *Bivens* claims against Morris, Smith and

3

Werlich should be dismissed because, after *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017), it is apparent his claims are not cognizable under *Bivens*. In *Ziglar*—a prisoner *Bivens* action dealing with the Fourth and Fifth Amendments—the Supreme Court held that federal courts should not expand *Bivens* actions to reach contexts that the Supreme Court has not officially recognized unless "special factors" counsel otherwise. *Id.* at 1859-60. The idea is that since *Bivens* is an implied remedy for damages under Constitutional principles rather than a legislatively-created remedy like 42 U.S.C. § 1983, courts should not expand that remedy unless there are special circumstances at hand. *Id*. at 1854-55.

The Supreme Court then explained that it has only officially recognized *Bivens* theories in three scenarios: (1) Fourth Amendment unreasonable searches and seizures; (2) Fifth Amendment gender discrimination; and (3) Eighth Amendment deliberate indifference to medical needs. *Id*. at 1855-56 (citing *Bivens*, 403 U.S. at 397; *Davis v. Passman*, 442 U.S. 228 (1979); *Carlson v. Green*, 446 U.S. 14 (1980)). This case—a First Amendment retaliation claim springing from a complaint about library hours and an Eighth Amendment claim about inmates' choices about how to spend their late afternoon time—is none of those things. Even though federal courts used to adjudicate First Amendment and Eighth Amendment *Bivens* actions all the time, the Court may no longer do so according to *Ziglar*. Especially considering that the Supreme Court said a few years before *Ziglar*, "We have never held that Bivens extends to First Amendment claims"—making it quite clear that the Supreme Court has not yet "officially recognized" a First Amendment *Bivens* claim. *Reichle v. Howards,* 566 U.S. at 663 n. 4 (2012). Nor has it recognized an Eighth Amendment *Bivens* claim outside of the medical care context. *See Minneci v. Pollard*, 565 U.S. 118, 120 (2012) (refusing to recognize Eighth Amendment

4

*Bivens* action against prison guards at private prison); *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001) (refusing to recognize Eighth Amendment *Bivens* action against private prison operator). Thus, Robinson's suit differs in meaningful ways from the three recognized *Bivens* contexts and therefore presents new contexts.

As previously mentioned, there is an exception where there are "special factors" that urge expanding *Bivens* here. These include questions like "whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed," and whether "there is an alternative remedial structure present in a certain case." *Ziglar*, 137 S. Ct. at 1858. And here, as Magistrate Judge Daly explains in the Report, Robinson has alternative avenues to obtain relief: he can seek relief—as he has in Count 2—under the Federal Tort Claims Act, and he can go through the Bureau of Prison's ("BOP") administrative remedies program. The Court does not believe it should turn this simple prison administrative issue regarding an undesirable library schedule into a lawsuit about money damages absent any sort of congressional action. This is especially true where the conduct at issue involves allocation of prison staff or other resources and judgment calls about what is advisable to maintain the safety and security of a prison.

Additionally, the Court notes that the BOP has broad discretion about regulating and administering prison employment, *see* Inmate Work and Performance Pay Program, 28 C.F.R. § 545.20, *et seq.*, and that courts have found prison inmates are not "employees" to which run-of-the-mill employment laws apply, *see, e.g., Vanskike v. Peters*, 974 F.2d 806, 808-10 (7th Cir. 1992) (Fair Labor Standards Act); *Williams v. Meese*, 926 F.2d 994, 997 (10th Cir. 1991) (Title VII and Age Discrimination in Employment Act). The comprehensive and exclusive BOP

regulation of federal inmate work programs is a special factor counseling against creating a *Bivens* cause of action for damages caused by adverse employment actions to inmate workers.

Magistrate Judge Daly came to the right conclusion for the right reasons. Various district court opinions suggesting otherwise are neither binding nor persuasive on this Court. Accordingly, this Court declines to recognize *Bivens* causes of action in the circumstances Robinson raises in Counts 1, 3 and 4 of this case.

    C.    <u>Failure to Exhaust Remedies:   Count 3</u>

Alternatively, Magistrate Judge Daly recommends dismissing Count 3, a retaliation claim against Smith, for Robinson's failure to exhaust administrative remedies. Robinson filed his only administrative remedy request mentioning Smith's conduct as a "sensitive" grievance. The request was rejected as not "sensitive," but Robinson did not refile it as a regular administrative remedy request as allowed by BOP regulations. Instead, he appealed the rejection of "sensitive" status. The appeal was also rejected, and Robinson was instructed to refile his request at the prison as a regular administrative remedy request. Magistrate Judge Daly found that, even if Robinson appealed the rejection of his sensitive request to the highest level, the option to file a regular administrative remedy request remained available to him, *see* 28 C.F.R. § 542.14(d)(1), so he had not exhausted all available administrative remedies.

Magistrate Judge Daly was completely correct. Prisons often have an emergency or sensitive grievance procedure that allows an inmate to skip the initial step or steps in the grievance process in critical or dangerous situations. Where, as here, the inmate is expressly allowed—and even instructed—to refile his complaint as a normal grievance if it is rejected as emergent or sensitive, the inmate must finish the process by filing a normal grievance. *Smith v.*

6

*Asselmeier*, No. 3:17-cv-1237-JPG-DGW, 2018 WL 3533346, at *2-3 (S.D. Ill. July 23, 2018) (considering similar Illinois grievance regulation, 20 Ill. Admin. Code § 504.840(d)(1): inmate "may resubmit the grievance [that was rejected as emergent] as non-emergent"), *aff'd,* 762 F. App'x 342 (7th Cir. 2019).[2] Otherwise, he has not exhausted his available administrative remedies as required by 42 U.S.C. § 1997e(a). Here, Robinson had available to him the normal administrative remedy request process, but he did not use it. Therefore, he failed to exhaust his available administrative remedies, and the Court must dismiss Count 3.

D. Failure to Exhaust Remedies: FTCA

Magistrate Judge Daly noted that exhaustion of administrative remedies is also required before a plaintiff can file an FTCA suit, and she found that Robinson did not exhaust his before filing this lawsuit. Robinson admits that is true but argues that his original complaint did not contain an FTCA claim and that he was therefore permitted to add one in his First Amended Complaint, filed after he exhausted his remedies.

Robinson's entire argument is premised on the fact that his original complaint, while pleading an Illinois retaliatory discharge claim against the United States, did not mention the FTCA. However, there is no such things as an Illinois retaliatory discharge claim against the United States other than under the FTCA. The labels Robinson used in his complaint did not control the claims he pled, and if he asserted the United States terminated his employment in violation of Illinois law, he has pled an FTCA claim regardless of what he called it. He pled this

---

[2] Robinson cites *Taylor v. Gilbert*, No. 2:15-CV-0348-JMS-DKL, 2016 WL 5944481, at *3 (S.D. Ind. Oct. 13, 2016), a district court order holding that when a grievance truly was sensitive, it was not necessary to refile it as a normal grievance. *Taylor* was decided before the Court of Appeals for the Seventh Circuit affirmed *Asselmeier*, and the Court is not persuaded by its reasoning.

claim before exhausting his administrative remedies, so his cause of action must be dismissed without prejudice for failure to exhaust.

Alternatively, even if Robinson had exhausted his remedies by the time he filed his First Amended Complaint, he was either a federal employee whose claim is preempted by the Civil Service Reform Act ("CSRA"), 5 U.S.C. § 1101 *et seq.*, *see Ayrault v. Pena*, 60 F.3d 346, 349 (7th Cir. 1995) (CSRA preempts all employment claims by federal workers),[3] or he is not a federal employee and cannot therefore be wrongfully discharged. For these reasons, Robinson fails to state a claim upon which relief could be granted.

### E. Motion for Leave to Amend Complaint

Finally, in a separate motion, Robinson asks for leave to file a second amended complaint asserting a request for injunctive relief against the defendants in their official capacities—reinstatement to his position in the law library and a change to the offending law library policy (Doc. 69).

Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. A plaintiff may amend its pleading once as a matter of course within 21 days of serving it or within 21 days after service of a response or a motion to dismiss, for a more definite statement or to strike. Fed. R. Civ. P. 15(a)(1). Otherwise, a plaintiff may amend his pleading only with the opposing parties' written consent, which Robinson has not obtained, or leave of court, which the Court should freely give when justice requires. Fed. R. Civ. P. 15(a)(2). Although the text of the rule has changed in recent years, the rule still "reflects a policy that cases should generally be decided on the merits and not on the basis of technicalities." *McCarthy v. Painewebber, Inc.*, 127

---

[3] The CSRA is another potential alternative to a *Bivens* remedy.

F.R.D. 130, 132 (N.D. Ill. 1989). Generally, the decision whether to grant a party leave to amend the pleadings is a matter left to the discretion of the district court. *Orix Credit Alliance v. Taylor Mach. Works*, 125 F.3d 468, 480 (7th Cir. 1997). A court should allow amendment of a pleading except where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010) (citing *Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 666 (7th Cir. 2007)). An amendment is futile if it would not survive a motion to dismiss for failure to state a claim, *GE Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997), or a motion for summary judgment, *Bethany Pharmacal Co. v. QVC, Inc.*, 241 F.3d 854, 860 (7th Cir. 2001).

The Court declines to allow Robinson to amend his pleading at this late stage of the case because the amendment request was unduly delayed on. Robinson has known since he filed his original complaint in December 2017 that he could seek injunctive relief from prison employees in their official capacities. In fact, he expressly did so in that pleading. Recruited counsel then filed the First Amended Complaint in December 2018 asking for injunctive relief but declining to sue any defendants capable of providing it. The defendants pointed this out in their February 2019 motion to dismiss Counts 1, 3, and 4 (Doc. 50 at 16 n. 9), but Robinson took no action at that time to add an appropriate defendant. Now, at the eleventh hour, he wants to remedy his omission but has not provided any good reason he has not done so earlier. Without a good reason justifying the delay, the Court will not allow an amended pleading at this late date.

Additionally, allowing the amendment would be futile. To obtain the injunction he

seeks, Robinson would have to prove "(1) that [he] has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). With respect to prisoner lawsuits seeking prospective relief, the Court must also find that the requested relief "is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). The Court must also give substantial weight to any adverse impact on the operation the prison caused by the relief. *Id.*

The injunction Robinson seeks would interfere with the operation of FCI-Greenville by dictating how prison officials fill an inmate job within the prison and how they schedule the hours the library is open for inmate use. In matters of prison administration, the Court normally affords prison administrators "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Bell v. Wolfish*, 441 U.S. 520, 547 (1979); *accord Henry v. Hulett*, 930 F.3d 836, 842 (7th Cir. 2019). In short, it is so unlikely that this Court would order FCI-Greenville officials to reinstate Robinson where the institution has articulated a security reason for removing him that the Court can fairly say such a request would be futile. Likewise, it would not order FCI-Greenville to manage its limited resources to schedule the library hours Robinson prefers where there is no suggestion that other hours are unavailable to him, that the hours have prejudiced him in any specific litigation, or that he has received inadequate nutrition

because he instead chose to make necessary visits to the law library.

For these reasons, the Court will deny Robinson leave to amend his complaint.

**IV.     Conclusion**

The Court has reviewed this matter *de novo* and finds that the Report is correct for the reasons stated therein and in this order.   Accordingly, the Court hereby:

- **ADOPTS** the Report in its entirety (Doc. 66) as **SUPPLEMENTED** by this order;

- **OVERRULES** Robinson's objection (Doc. 67);

- **GRANTS** the motion to dismiss or, in the alternative, for summary judgment filed by the United States (Doc. 47);

- **GRANTS** the motion to dismiss filed by R. Morris, Lt. Smith, and T.G. Werlich (Doc. 50);

- **GRANTS**, in the alternative, the motion for summary judgment filed by Lt. Smith (Doc. 49);

- **DENIES** Robinson's motion for leave to amend his complaint (Doc. 69); and

- **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATED:   December 23, 2019**

                                     s/ J. Phil Gilbert
                                     **J. PHIL GILBERT**
                                     **DISTRICT JUDGE**